## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **SHEM BRIJBILAS** | : | **Civil Action No.: 22-cv-1461** |
| | : | |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **CONNECTICUT DEPARTMENT** | : | |
| **OF CORRECTION** | : | |
| | : | |
| **Defendant** | : | **November 15, 2022** |

## <u>COMPLAINT</u>

1.      This is an action for equitable relief and damages as a result of

Defendant's violation of Title VII for employment discrimination on the basis of race,

religion, national origin and retaliation.

## <u>THE PARTIES</u>

2.      Shem Brijbilas (hereinafter "Plaintiff"), is a male individual of the full age

of majority and a citizen of the State of Connecticut, who resides at 428 Sylvan Avenue,

Waterbury, CT  06706.

3.      The State of Connecticut, Dept. of Correction ("Defendant" and/or

"DOC"), is located at 24 Wolcott Hill Road, Wethersfield, CT  06109.  Defendant was

the Plaintiff's principal employer and is an employer as defined under Title VII.

## <u>JURISDICTION AND VENUE</u>

4.      The jurisdiction of this court is founded upon 28 U.S.C. §1331 and 28

U.S.C. §1343.  Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §

1391(b) in that the claims arose in this district and Plaintiff resides in this district.

## ADMINISTRATIVE HISTORY AND
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiff has exhausted administrative remedies.  Plaintiff filed timely claims of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), claim number 2130636, which was duly filed with the Equal Employment Opportunity Commission ("EEOC"), claim number 16A2020101073, against Defendant DOC.  Plaintiff was granted a release of jurisdiction to pursue his claims in court from the EEOC on September 16, 2022.

## FACTUAL BACKGROUND
## (Relevant to all Counts)

6.      Plaintiff is a brown-skinned Asian American man who is affiliated with the Muslim religion.

7.      Plaintiff was hired by the DOC on February 7, 2014 as a Correctional Officer and began working at Defendant's Cheshire Correctional Facility in December, 2015.

8.      Plaintiff, a dedicated public servant, holds no history of disciplinary action and has always received positive performance evaluations.

9.      In August, 2017, Plaintiff was informed by Corrections Officer Mike Mucha that one of his prior incident reports had been modified and posted in the Officer's Mess (OM) room, which is accessible to all staff at the facility, as well as some of the prisoners.

10.     Many copies of that incident report, dated August 13, 2017, had been posted throughout the room.  The changes made to that document referred to the Plaintiff with obscene language, racial slurs and derogatory comments of a sexual nature with

statements of "I like big dicks, I can suck dick all day, blacks, Hispanics, Asians, whites all kind of dicks."

11. Plaintiff reported the incident to his Union President, and showed him the doctored incident report.

12. Plaintiff also filed a Page One Incident report with then-Warden Scott Erfie ("Erfie"), a Caucasian male. Erfie promised to investigate the incident, but thereafter never followed up with the Plaintiff.

13. For several months after this incident, Plaintiff attempted to follow up with Erfie to get information on the investigation, but he was never given any information or results of any investigation.

14. Following the filing of Plaintiff's Page One Incident report, Plaintiff was retaliated against, including being subjected to an ongoing course of discriminatory treatment, based on his ethnicity and religious affiliation wherein:

    a. Since the filing of that Page One Incident report, Plaintiff has applied over ten (10) times for weapons access, but denied access, being advised that there were too many members already possessing weapons in his scheduled slot.

    b. Yet, less experienced Caucasian employees in the same slot as Plaintiff have been granted weapons access, despite having no familiarity with guns and not having passed the qualifications test vs. Plaintiff's years of experience, pistol permit and being well versed in firearm safety.

c. In 2019, Plaintiff applied for "Use of Force" training and that request was also denied, yet less senior Caucasian employees were granted their requests for the same training.

d. Between 2017 and 2020, Plaintiff applied for a series of training positions which he was denied. This included an application for Intel officer and an application for phone monitor. On both occasions, the Defendant advised the Plaintiff that they did not have sufficient funds to train him for these positions.

e. Shortly after Plaintiff was denied each one of these positions, Defendant trained Caucasian employees for those positions.

15. On April 21, 2021, Plaintiff was advised by several co-workers that another doctored incident report had been found at the copy machine within OM.

16. That doctored incident report was a re-creation of a prior Incident Report that Plaintiff had authored, but was edited to include discriminatory and derogatory statements pertaining to "white power" and alluded to Aryans and Nazism.

17. It further included homophobic suggestion, racial and religious slurs, including the words "Muslim Cunt," Muslim Faggot"and "Blacktivity Bitch Officer as well as stating that "Muslims need to know their place" and to bend to the "Superior Race."

18. Plaintiff was threatened and targeted by this second doctored incident report and immediately reported the incident to Captain Correia (Caucasian), Lieutenant Marquis (Caucasian) and Lieutenant Collela (Caucasian). Plaintiff was advised to write a

Page One Incident Report and was advised that the incident would be reported to the Warden, Denise Walker (African-American Female).

19. On April 21, 2021, Plaintiff submitted his Page One Incident Report. The following day on April 22, 2021, Plaintiff also submitted an addendum to his filed Incident Report to include information that 1) he did not feel safe at work and that he was concerned for his safety and well being; and 2) he felt he was being subjected to race discrimination in regards to assignments.

20. On April 22, 2021, Plaintiff met with Warden Walker along with Union President Howard, Captain Dometriz, Deputy Warden Peterson and co-worker Fawaz Syed, another correctional officer who had also been a victim of a similar incident involving anti-Muslim and anti-immigrant statements.

21. During that meeting, Captain Dometriz and Deputy Warden Peterson shrugged off and downplayed the incident, but Warden Walker promised to fully investigate.

22. The following day, April 23, 2021, witness Fawaz Syed's car was keyed while at the Defendant's location.

23. On May 24, 2021, Plaintiff met with the Connecticut State Police to give a sworn statement regarding the April 21, 2021 doctored incident report.

24. The Defendant thereafter failed to utilize an unbiased third party to investigate the above events and instead it investigated itself wherein the Defendant's Affirmative Action division began an investigation.

25. On September 1, 2021, Plaintiff was interviewed by Captain Kristopher Limmer and Captain Nicole Prior.

5

26. During that interview Plaintiff was questioned regarding his use of a personal USB stick to save his work-related documents.

27. During that interview Defendant indicated that they analyzed two computers, one in the OM, which showed that a USB stick was utilized on April 13, 2021 at 11:07 to access a file named Racist Incident Report Supplemental dated 1/27/20.

28. During that interview Defendant indicated that they also analyzed a second computer at the visiting lobby where the Plaintiff was working on April 13, 2021 and that this same document was accessed from allegedly the same USB stick on the visiting lobby computer between the hours of 9:51 AM to 11:07 AM.

29. During that interview, Plaintiff was further provided misleading and false information, including being told that video surveillance showed the alleged USB stick in the visiting lobby computer on April 12, 2021, while Plaintiff was assigned to that location.

30. Defendant's computer forensic report stated "A USB drive connected to the OM PC shown to have a word document titled "CN 6605, Racist Incident Report-Supp 1-27-20.docx." The meta data of this document shown that it was created on 4/13/21 at 11:07AM and saved on a ScanDisc Ultra 3.0 USB drive, Serial Number 4C530000060328108225. The USB serial number was given to MIS and with their assistance were able to match the serial number to a PC used in Cheshire located in the visiting lobby. The USB information also indicated that it was last connected to the Lobby PC on 4/13/21 from the hours of 9:51 AM to 11:07 AM."

31.     Defendant video surveillance confirmed that Plaintiff was in fact assigned to the visiting lobby on 4/13/21 and that he was physically present at his assignment during the relevant time period (7:00 AM to 2:30 PM).

32.     The video surveillance also confirmed that Plaintiff could not have been the individual accessing any file or files on a ScanDisc on the OM computer at 11:07 AM that same morning.

33.     Defendant video surveillance was further unable to verify Plaintiff inputting or utilizing any USB stick during the relevant time while he was assigned and present at his visiting lobby post from 7:00 AM to 2:30 PM.

34.     Although the Defendant was unable to substantiate any wrongdoing on the part of the Plaintiff, at the conclusion of Defendant's investigation it was stated that it was "Reasonable to believe CO Brijbilas created the offensive material and had knowledge of the material being left in the OM for other staff members to find." In other words, Defendant accused Plaintiff of perpetrating a hoax.

35.     Effective April 17, 2021, Defendant terminated the Plaintiff's employment on the above hypothetical and inconclusive findings, in part, as a result of its bias against brown-skinned and Muslim correctional officers.

**COUNT ONE**

**DISCRIMINATION IN VIOLATION OF TITLE VII ON THE BASIS OF RACE, COLOR AND NATIONAL ORIGIN**

1-35.     Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 35 with the same force and effect as if more fully set forth herein.

36.     Plaintiff is a brown-skinned male individual of South Asian ethnicity.

37. During all relevant times, Plaintiff was fully qualified in his position as a Correctional Officer.

38. Plaintiff's race, color and national origin was the cause of ongoing systematic harassment by DOC officers.

39. Plaintiff's initial complaints regarding offensive and discriminatory acts occurring against his person in August of 2017, were wholly ignored by the Defendant.

40. In April, 2021, when Plaintiff was once again the target of discriminatory and derogatory statements pertaining to "white power" and alluded to Aryans and Nazism, homophobic suggestion, racial and religious slurs, including the words "Muslim Cunt," Muslim Faggot"and "Blacktivity Bitch Officer as well as stating that "Muslims need to know their place" and to bend to the "Superior Race."

41. Plaintiff was retaliated against when following an internal investigation, when he was accused of personally authoring and disseminating the offensive materials as a hoax, and was terminated on inconclusive, groundless and hypothetical findings.

42. The terms and conditions of employment at DOC are different for White Men, who are not subject to the type of harassment, defamatory accusation, biased investigation, and persecution that Plaintiff has suffered as a result of the conduct alleged above. DOC discriminates against non-White Male correctional officers, especially brown-skinned men like the Plaintiff.

43. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

44. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

**COUNT TWO**
**DISCRIMINATION IN VIOLATION OF TITLE VII ON THE BASIS OF RELIGION**

1-35. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 35, with the same force and effect as if more fully set forth herein.

36. Plaintiff is an individual of the Muslim religion.

37. During all relevant times, Plaintiff was fully qualified in his position as a Correctional Officer.

38. Plaintiff's Muslim Religion was the cause of ongoing systematic harassment by an unidentified DOC officer or officers.

39. Plaintiff's initial complaints regarding offensive and discriminatory acts occurring against his person in August of 2017, were wholly ignored by the Defendant DOC.

40. In April, 2022, when Plaintiff was once again the target of discriminatory and derogatory statements pertaining to "white power" and alluded to Aryans and Nazism, homophobic suggestion, racial and religious slurs, including the words "Muslim Cunt," Muslim Faggot"and "Blacktivity Bitch Officer as well as stating that "Muslims need to know their place" and to bend to the "Superior Race."

41. Plaintiff was retaliated against when he was accused of personally authoring and disseminating the offensive materials as a hoax and was terminated on inconclusive, groundless and hypothetical findings.

42. The terms and conditions of employment at DOC are different for non-Muslims, who are not subject to the type of harassment, defamatory accusation, biased investigation, and persecution that Plaintiff has suffered as a result of the conduct alleged above. DOC discriminates against Muslim correctional officers.

43. Plaintiff has suffered and will continue to suffer injuries and losses as a result of Defendant's wrongful and discriminatory acts.

44. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

**<u>COUNT THREE</u>**
**RETALIATION IN VIOLATION OF TITLE VII**

1-35. Plaintiff repeats and realleges each and every allegation set forth above in paragraphs 1 through 35, with the same force and effect as if more fully set forth herein.

36. Plaintiff is of South Asian Ethnicity and of the Muslim faith.

37. Defendant action of ignoring and failing to act on Plaintiff's initial complaints of harassment and hostile work environment in August of 2017, was a sign that told Plaintiff his religion and national origin, was not worthy of equal protection creating a hostile, harassing, toxic, unsafe and intimidating work environment.

38. Defendant action of ignoring and failing to investigate Plaintiff's claims of differential, disparate and discriminatory employment practices in bypassing Plaintiff for

trainings and job assignments and instead terminating his employment based on unsupported facts, constitutes retaliation.

39. Defendant action of subjecting the Plaintiff to a termination of his employment on inconclusive, groundless and hypothetical findings, instead of further investigating Plaintiff's claim, constitutes retaliation.

40. As a result of said actions, Plaintiff has suffered damages and is entitled to recover all relief available under the federal statute, including punitive damages and attorney fees.

## **PRAYER FOR RELIEF**

Wherefore Plaintiffs claim the following:

A. Compensatory damages;

B. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law;

C. Punitive damages and expert witness fees;

D. Prejudgment interest;

E. That this Court retain jurisdiction over this matter;

F. Trial by jury; and

G. Such other relief as the Court deems just, fair and equitable.

Respectfully submitted,

The Plaintiff,

SHEM BRIJBILAS


By: _____/S/_____
       Alexander T. Taubes
       470 James Street
       Suite 007
       New Haven, CT 06513
       (203) 909-0048
       alextt@gmail.com
       Juris No.: 437388